IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ALFREDO RIVERA,**<br><br>Petitioner,<br><br>**v.**<br><br>**DAVE B. LONG, Warden,**<br><br>Respondent. | **Case No. 1:12-cv-00192 LJO MJS (HC)**<br><br>**FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent is represented by Max Feinstat of the office of the California Attorney General.

**I.      PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Fresno, following his conviction by jury trial on July 19, 2010, of second degree robbery and found true an enhancement that an accomplice of the robbery was armed with a firearm. (Clerk's Tr. at 338.)  On April 20, 2010, Petitioner was sentenced to a determinate term of seventeen (17) years in prison. (Id.)

Petitioner filed a direct appeal with the California Court of Appeal, Fifth Appellate

1  District, on January 21, 2011. (Lodged Doc. 1.) The appeal was denied on September

2  20, 2011. (Lodged Doc. 4.) Petitioner's petition for review was summarily denied by the

3  California Supreme Court on December 14, 2011. (Lodged Doc. 5-6.)

4      Petitioner filed his federal habeas petition on February 10, 2012. (Pet., ECF No.

5  1.) The petition raised four grounds for relief: 1) The trial court did not allow him to admit

6  impeachment evidence of the lead detective; 2) the trial court did not allow him to

7  impeach a prosecution witness regarding his prior convictions; 3) the trial court abused

8  its discretion by failing to dismiss his prior strike conviction; and 4) cumulative error.

9      Respondent filed an answer to the petition on August 9, 2012. (Answer, ECF No.

10 14.) Petitioner filed a traverse on September 17, 2012. (Traverse, ECF No. 19.)

11 **II.    STATEMENT OF THE FACTS[1]**

12      A jury found Alfredo Rivera, the getaway driver for a furniture store
   burglary, guilty of second degree robbery and found an allegation of the
13  arming of a principal with a firearm true. At a bifurcated bench trial, the
   court found allegations of a strike prior, a serious-felony prior, and a
14  prison-term prior true. The court imposed a 17-year prison sentence. On
   appeal, Rivera argues two evidentiary issues, one sentencing issue, and
15  cumulative error. We affirm.

16  **FACTUAL BACKGROUND**

17      Viewed in accordance with the usual rules on appeal,**[FN1]** the
   evidence established that, on the afternoon of May 25, 2009, a man
18  walked into a furniture store and asked a salesman if there were any TVs
   for sale. The salesman said no. The man walked through the store,
19  "looking throughout the layout of the store," and again asked if there were
   any TVs for sale. The salesman again said no. The man walked out of the
20  store.

21      **FN1**. See People v. Ochoa (1993) 6 Cal.4th 1199, 1206.

22      About 30 seconds later, another man walked into the store. Holding
   a shotgun and wearing a nylon stocking on his face, he told the salesman,
23  "Give me the money," hit him with the shotgun, and said he was going to
   blow his head off. After the salesman gave him the cashbox, the man
24  demanded his wallet and again threatened to shoot him. After the
   salesman gave him his wallet, the man demanded his cell phone and
25  threatened yet again to shoot him. "Don't you remember you hit it out of
   my hand when you hit me the first time," the salesman asked. The man
26

27 [1] The Fifth District Court of Appeal's summary of the facts in its September 20, 2011 opinion is presumed
   correct.  28 U.S.C. § 2254(e)(1).

28

replied, "Get on your knees." Thinking the man was going to shoot him, the salesman got on his knees and closed his eyes. All of a sudden he heard footsteps and saw the man run out the door. The salesman went after him.

As soon as the salesman was outside, he saw a California Highway Patrol officer in front of the store. He flagged him down and said, "I just got robbed." [*3] At that moment, Rivera drove by. The man who asked about the TVs was in the front passenger seat. The salesman told the officer, "That's them." The officer told him to get in. He followed the car Rivera was driving. After briefly losing sight of the car, the salesman saw Rivera and his passenger on foot, saw the car Rivera drove parked on the side of the street, and saw the shotgun, the cashbox, and the wallet in the back seat. The man who hit him with the shotgun was running away from the car. Rivera did not testify at trial.

**PROCEDURAL BACKGROUND**

On October 15, 2009, the district attorney filed an information charging that Rivera committed a second degree robbery (Pen. Code, §§ 211, 212.5, subd. (c)),**[FN2]** alleged that he had two serious or violent felonies or juvenile adjudications within the scope of the three strikes law (§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), alleged that he had one serious felony prior (§ 667, subd. (a)(1)), alleged that he had one prison term prior (§ 667.5, subd. (b)), and alleged that a principal was armed with a shotgun during the commission of the offense (§ 12022, subd. (a)(1)). The information charged the other two men, too, but ultimately Rivera [*4] went to trial alone.

> **FN2**. Later statutory references are to the Penal Code unless otherwise noted.

On March 5, 2010, a jury found Rivera guilty of second degree robbery and found the arming allegation true. The court found all of the prior allegations true except for the juvenile adjudication that was alleged as a strike prior.

On April 20, 2010, the court imposed an aggregate 17-year sentence comprising a 10-year term (twice the aggravated five-year term) on the second degree robbery, a five-year enhancement on the serious felony prior, a one-year enhancement on the arming of a principal, and a one-year enhancement on the prior prison term. (§§ 213, subd. (a)(2), 667, subds. (a)(1), (e)(1), 667.5, subd. (b), 1170.12, subd. (c)(1), 12022, subd. (a)(1).)

People v. Rivera, 2011 Cal. App. Unpub. LEXIS 7111, 1-4 (Cal. App. 5th Dist. 2011).

## II.   DISCUSSION

### A.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. §

2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the conviction challenged arises out of the Fresno County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2241(d); 2254(a). Accordingly, the Court has jurisdiction over the action.

### B.    Legal Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Under AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n. 7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

### 1.    Contrary to or an Unreasonable Application of Federal Law

A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result."  Brown v. Payton, 544 U.S. 133, 141 (2005) citing Williams, 529 U.S. at 405-06. "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that

even a general standard may be applied in an unreasonable manner" Panetti v. Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted).  The "clearly established Federal law" requirement "does not demand more than a 'principle' or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009).  For a state decision to be an unreasonable application of clearly established federal law under § 2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle (or principles) to the issue before the state court.  Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003).  A state court decision will involve an "unreasonable application of" federal law only if it is "objectively unreasonable." Id. at 75-76, quoting Williams, 529 U.S. at 409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the Court further stresses that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." 131 S. Ct. 770, 785 (2011), (citing Williams, 529 U.S. at 410) (emphasis in original).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786 (citing Yarborough v. Alvarado, 541 U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts have in reading outcomes in case-by-case determinations." Id.; Renico v. Lett, 130 S. Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 129 S. Ct. 1411, 1419 (2009), quoted by Richter, 131 S. Ct. at 786.

## 2.   Review of State Decisions

"Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the claim rest on the same grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This is referred to as the "look through" presumption. Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198 (9th Cir. 2006). Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion, "does not require that there be an opinion from

1   the state court explaining the state court's reasoning." <u>Richter</u>, 131 S. Ct. at 784-85.

2   "Where a state court's decision is unaccompanied by an explanation, the habeas

3   petitioner's burden still must be met by showing there was no reasonable basis for the

4   state court to deny relief." <u>Id.</u> ("This Court now holds and reconfirms that § 2254(d) does

5   not require a state court to give reasons before its decision can be deemed to have been

6   'adjudicated on the merits.'").

7       <u>Richter</u> instructs that whether the state court decision is reasoned and explained,

8   or merely a summary denial, the approach to evaluating unreasonableness under §

9   2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments

10  or theories supported or, as here, could have supported, the state court's decision; then

11  it must ask whether it is possible fairminded jurists could disagree that those arguments

12  or theories are inconsistent with the holding in a prior decision of this Court." <u>Id.</u> at 786.

13  Thus, "even a strong case for relief does not mean the state court's contrary conclusion

14  was unreasonable." <u>Id.</u> (citing <u>Lockyer v. Andrade</u>, 538 U.S. at 75).   AEDPA "preserves

15  authority to issue the writ in cases where there is no possibility fairminded jurists could

16  disagree that the state court's decision conflicts with this Court's precedents." <u>Id.</u>  To put

17  it yet another way:

18      As a condition for obtaining habeas corpus relief from a federal
19      court, a state prisoner must show that the state court's ruling on the claim
        being presented in federal court was so lacking in justification that there
        was an error well understood and comprehended in existing law beyond
20      any possibility for fairminded disagreement.

21  <u>Id.</u> at 786-87.  The Court then explains the rationale for this rule, i.e., "that state courts

22  are the principal forum for asserting constitutional challenges to state convictions." <u>Id.</u> at

23  787.  It follows from this consideration that § 2254(d) "complements the exhaustion

24  requirement and the doctrine of procedural bar to ensure that state proceedings are the

25  central process, not just a preliminary step for later federal habeas proceedings."  <u>Id.</u>

26  (citing <u>Wainwright v. Sykes</u>, 433 U.S. 72, 90 (1977).

27       3.   <u>Prejudicial Impact of Constitutional Error</u>

28      The prejudicial impact of any constitutional error is assessed by asking whether

6

1   the error had "a substantial and injurious effect or influence in determining the jury's

2   verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551

3   U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the

4   state court recognized the error and reviewed it for harmlessness).  Some constitutional

5   errors, however, do not require that the petitioner demonstrate prejudice. See Arizona v.

6   Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659

7   (1984).  Furthermore, where a habeas petition governed by AEDPA alleges ineffective

8   assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the

9   Strickland prejudice standard is applied and courts do not engage in a separate analysis

10  applying the Brecht standard.  Avila v. Galaza, 297 F.3d 911, 918, n. 7 (2002).  Musalin

11  v. Lamarque, 555 F.3d at 834.

12  **III.    REVIEW OF PETITION**

13       **A.    Claim One: Denial of Use of Impeachment Evidence**

14       Petitioner contends that the trial court abused its discretion and violated his rights

15  under the Confrontation Clause in denying Petitioner the opportunity to impeach the lead

16  detective regarding the detective's prior criminal conduct. (Pet., ECF No. 1 at 44-60.)

17            1.    State Court Decision

18       Petitioner presented this claim by way of direct appeal to the California Court of

19  Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the

20  appellate court and summarily denied in a subsequent petition for review by the

21  California Supreme Court. (See Lodged Doc. 4, 6.) Because the California Supreme

22  Court's opinion is summary in nature, this Court "looks through" that decision and

23  presumes it adopted the reasoning of the California Court of Appeal, the last state court

24  to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n.3

25  (1991) (establishing, on habeas review, "look through" presumption that higher court

26  agrees with lower court's reasoning where former affirms latter without discussion); see

27  also LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000) (holding federal courts

28  look to last reasoned state court opinion in determining whether state court's rejection of

petitioner's claims was contrary to or an unreasonable application of federal law under 28 U.S.C. § 2254(d)(1)).

In denying Petitioner's claim, the California Court of Appeal explained:

**1. Evidence to Impeach the Lead Detective**

Rivera argues that his lack of an opportunity to admit as impeachment evidence the lead detective's prosecution on felony charges and subsequent acquittal after trial by jury was an abuse of discretion in violation of his federal constitutional rights to due process, confrontation, and presentation of a defense. The Attorney General argues that Rivera forfeited his right to appellate review by failing to object, that his argument is meritless, and that error, if any, was harmless.

On October 19, 2009, the prosecutor filed a motion in limine asking the court to preclude the defense from "attacking the character" of the lead detective with evidence of his "arrest and prosecution for VC 10851 and PC 496d(a)" and of his later acquittal after trial by jury.**[FN3]** The motion argued that the evidence was more prejudicial than probative. (Evid. Code, § 352.)**[FN4]** At the time, Rivera still faced a trial with his two codefendants.

> **FN3**. Rivera's two evidentiary issues, each of which we consider separately, arise out of two motions in limine the prosecutor brought in the same document. On October 20, 2009, as Rivera and his two codefendants awaited trial together, one court ruled on both motions. A different court, which presided over Rivera's separate trial, which began on March 1, 2010, heard both motions, issued no ruling in one (as to the lead detective), and issued a contrary ruling in the other (as to a prosecution witness). (See infra, part 2.)

> **FN4**. "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)

At the hearing on the motion later that day, the prosecutor informed the court he intended to call the lead detective as a witness. The court inquired of all three defense attorneys "if they intend to open that door and get into that issue before the court has to rule." Rivera's attorney said he did not intend to "unless [the lead detective] should say something that would raise the issue." One codefendant's counsel said he did not intend to "unless [the lead detective] gets on the witness stand [and] says something that would trigger a response from me." The other codefendant's counsel said he had "no intention of addressing this issue in my case in my defense." The court inquired of the prosecutor, "Does that satisfy your concern[?]" The prosecutor answered, "It does, Your Honor."

On October 20, 2009, the court ruled on the motion. Observing that all three defense attorneys "appear to agree that the case relating to his

prosecution and acquittal is an [sic] improper character evidence," the court noted, "He, of course, was acquitted. And that matter in the Court's view is not a proper subject to be brought before the trier of fact in this case. That clearly falls within 352, and [in] the Court's view has no relevance or probative value under 210."**[FN5]**

> **FN5**.  "'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.)

On March 1, 2010, the calendar judge denied Rivera's motion for a continuance and sent his case out for trial, granted one codefendant's motion for a continuance, and opened a section 1368 inquiry in the other codefendant's case after finding good cause to sever. The court presiding over Rivera's trial took note of "previous rulings on in limine motions" and asked the prosecutor to "place those on the record." The prosecutor told the court that the motion at issue was "to exclude impeachment of [the lead detective] with the fact he was arrested and tried on a felony 10851. Charge he was acquitted at trial." He noted that the previous ruling "was to not admit that at trial" and elaborated, "At that time the People were not intending on introducing the - Mr. Rivera's statement due to <u>Aranda-Bruton</u>**[FN6]** issues. Now since we're just down to Mr. Rivera, I believe the People will reconsider that and actually introduce Mr. Rivera's statement. We may be able to effectively redact that portion."

> **FN6**. <u>Bruton v. United States</u> (1968) 391 U.S. 123; <u>People v. Aranda</u> (1965) 63 Cal.2d 518.

The court suggested a tentative ruling to "exclude testimony regarding the officer's trial with this exception. I think all counsel and the Court need to look at the transcript to see the context in which the officer made that comment during the course of the investigation. The Court will then rule on whether or not that can or should be redacted or whether it's such an integral part of the interview and investigation process that the jury would have to hear it. On the face of it, it would appear that it wasn't an effective gambit by way of - I don't know what was said. So we'll wait until we see the transcript. But subject to that one exception, his prior involvement as a defendant would not be brought to the attention of the jury."**[FN7]**

> **FN7**. The quoted colloquy betrays a mistaken assumption by court and counsel alike that the lead detective made a comment about his own arrest, prosecution, or acquittal while interviewing Rivera. The record shows the contrary.

After commenting generally, "I am always amazed at how little jurors remember, or how little they really know," the court noted, as to Rivera's case, "I would not expect a juror to say oh, are you the officer whose name is gonna be on the board, are you the officer that was arrested for such and such? If that comes up, we'll - I think we don't need to resolve that right this minute, but I think we need to have a response because - I'll talk about my voir dire in a moment. If somebody says oh, is that the officer that was arrested for?" Rivera's attorney pointed out, "It was vehicle theft." The court ended the dialogue with the comment, "So

we'll come back to that." As the Attorney General notes, "Neither the court nor counsel raised the matter again." Rivera does not dispute the Attorney General's observation.

On that record, the Attorney General argues, "At no time did [Rivera] lodge an objection on any basis to the trial court's tentative ruling excluding the impeachment evidence. Finally, [he] failed to ask the court to return to the matter for a final ruling. Therefore, having failed to object below and request a final ruling, [he] has forfeited this claim on appeal." We agree. "A tentative pretrial evidentiary ruling, made without fully knowing what the trial evidence would show, will not preserve the issue for appeal if the appellant could have, but did not, renew the objection or offer of proof and press for a final ruling in the changed context of the trial evidence itself." (<u>People v. Holloway</u> (2004) 33 Cal.4th 96, 133.) "An appellate contention that the erroneous admission or exclusion of evidence violated a constitutional right is not preserved in the absence of an objection on that ground below." (<u>People v. Daniels</u> (2009) 176 Cal.App.4th 304, 320, fn. 10.)

Even if Rivera had not forfeited his right of appellate review, his argument is meritless. He characterizes as lacking "even the minimally-required Evidence Code section 352 analysis" the court's ruling on the evidence at issue and focuses on the lead detective's acknowledging that he used a ruse - a common law enforcement technique for interviewing crime suspects - to help him determine if Rivera was telling the truth. On the witness stand, the lead detective candidly testified that a ruse is "a bit of trickery that we use in an interrogation." Asked on cross-examination if it was "safe to say" a ruse is "a lie," he answered, "Absolutely." Rivera complains that without the evidence at issue the lead detective was "cloaked with the misleading aura of credibility stemming from his law enforcement status."

Just before ruling on the motion in limine as to the lead detective, the court asked the prosecutor to put on the record the previous motion-in-limine rulings. The prosecutor began by naming two people whom the previous rulings had addressed. The court asked, "One is a victim and one is a witness?" The question accurately reflected the content of the motion and manifested the court's awareness of the identities of both. As soon as the prosecutor summarized both previous rulings, the court replied, "All right. That would remain the order," and the court and counsel at once began to discuss the previous ruling as to the lead detective. On that record, since the prosecutor's motions in limine as to all three people were in consecutive sections of the same document, the inference arises that the court was familiar with all three. "It is presumed that official duty has been regularly performed." (Evid. Code, § 664.) Absent contrary evidence, the Evidence Code section 664 presumption applies to the court's actions. (<u>Younesi v. Lane</u> (1991) 228 Cal.App.3d 967, 974, overruled on another ground by <u>Van Beurden Ins. Services, Inc. v. Customized Worldwide Weather Ins. Agency, Inc.</u> (1997) 15 Cal.4th 51, 63.) In making an Evidence Code section 352 ruling, a court need neither expressly weigh the prejudicial effect against the probative value nor expressly proclaim compliance with the balancing process so long as the record as a whole shows that the court was aware of and performed the requisite balancing functions. (<u>People v. Taylor</u> (2001) 26 Cal.4th 1155, 1169.) That is the state of the record here.

Rivera emphasizes that the lead detective, whose testimony he characterizes as "essential" to the prosecution's case, "admitted to telling lies during his interviews with [him] to induce [him] to make statements." He intimates that the jury, in the absence of the evidence at issue, might have disbelieved his testimony. Quite to the contrary, the lead detective's candid admissions that a ruse was "a bit of trickery" and absolutely "a lie" made him more, not less, credible, as did the testimony of a bystander, a crime scene technician, the salesperson, and another officer who, like physical evidence at the scene, corroborated his testimony, not Rivera's statements.

On that record, Rivera suffered no prejudice. "A trial court's ruling to admit or exclude evidence offered for impeachment is reviewed for abuse of discretion and will be upheld unless the trial court 'exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.'" (People v. Ledesma (2006) 39 Cal.4th 641, 705.) A court's exercise of Evidence Code section 352 discretion to exclude impeachment evidence does not violate the confrontation clause unless a reasonable jury might have received a significantly different impression of the witness's credibility had the excluded cross-examination been permitted. (People v. Quartermain (1997) 16 Cal.4th 600, 623-624, citing Delaware v. Van Arsdall (1986) 475 U.S. 673, 680.) As a general rule, the ordinary rules of evidence do not impermissibly infringe on the accused's constitutional right to present a defense. (People v. Lawley (2002) 27 Cal.4th 102, 155.) That is so here. The essential question, of course, is whether the admission or exclusion of the evidence "so fatally infected the proceedings as to render them fundamentally unfair." (See Jammal v. Van de Kamp (9th Cir. 1991) 926 F.2d 918, 919.) The record answers that question in the negative.

People v. Rivera, 2011 Cal. App. Unpub. LEXIS 7111 at 4-14.

2.      Procedural Default

Respondent contends that Petitioner's claim is barred by the procedural default doctrine as stated in Coleman v. Thompson, 501 U.S. 722 (1991).  Coleman bars review of a petitioner's federal habeas claim when the claim was rejected in state court based on an adequate and independent state procedural bar.  Id. at 729-30.

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750.

Respondent points out that such a procedural bar must have risen from explicit and independent state law.  Id. at 735; Harris v. Reed, 489 U.S. 255, 265 (1988). For the procedural bar to be adequate, the bar must be clear, consistently applied, and well

11

1  established at the time of the alleged default. Collier v. Bayer, 408 F.3d 1279, 1284 (9th

2  Cir. 2005).  Also, the opinion of the last state court rendering a judgment in the case

3  must clearly and expressly state that its judgment rests on a state procedural bar.

4  Harris, 489 U.S. at 263; see Coleman, 501 U.S. at 729-30.

5          Here, Petitioner's counsel failed to object to the court's ruling excluding the

6  impeachment evidence of the detective. The state court ruled that "[a]n appellate

7  contention that the erroneous admission or exclusion of evidence violated a

8  constitutional right is not preserved in the absence of an objection on that ground

9  below." People v. Rivera, 2011 Cal. App. Unpub. LEXIS 7111 at 4-14 (citing People v.

10 Daniels, 176 Cal.App.4th 304, 320, fn. 10 (2009).). In making this ruling, the state court

11 relied on California's contemporaneous objection rule, that the failure to raise a specific

12 and timely objection in the trial court bars the issue's consideration by appellate courts.

13 See Cal. Evid. Code § 353; People v. Alvarez, 14 Cal. 4th 155, 186, 58 Cal. Rptr. 2d

14 385, 403, 926 P.2d 365 (1996).The Supreme Court has held that a violation of a state

15 contemporaneous objection rule can indeed result in a habeas petitioner's claim being

16 barred under the procedural default doctrine. Wainwright v. Sykes, 433 U.S. 72, 90.

17         The Ninth Circuit uses a burden-shifting analysis to determine adequacy. Bennett

18 v. Mueller, 322 F.3d 573, 585-586 (9th Cir. 2003). Under this analysis, when the state

19 pleads, as an affirmative defense, that a claim is procedurally barred, the burden shifts

20 to the petitioner to challenge the adequacy of that bar by showing that it has been

21 inconsistently applied. Id. Where the petitioner challenges the adequacy of the bar, the

22 state retains the ultimate burden of proving adequacy. Id.

23         Respondent argues that the contemporaneous objection rule in question is

24 explicit and independent state law. The opinion of the last state court rendering

25 judgment, the Fifth District Court of Appeal, citing People v. Daniels, 176 Cal.App.4th at

26 320, fn. 10, clearly and expressly stated that Petitioner's failure to preserve his

27 challenge was grounds to deny his claim.

28         In this case, Petitioner, who is proceeding pro se, makes no response to the

1  procedural bar asserted by respondent and therefore fails to meet his burden of shifting

2  the burden back to Respondent. See King v. Lamarque, 464 F.3d 963, 967 (9th Cir.

3  2006) ("Bennett requires the petitioner to 'place [the procedural default] defense in

4  issue" to shift the burden back to the government"). It should also be noted that when

5  challenged, federal courts have questioned whether the contemporaneous objection

6  rule is consistently applied and well established. See e.g., Steele v. Ayers, 2010 U.S.

7  Dist, LEXIS 70731 (E.D. Cal. July 14, 2010) (failing to rely on other federal courts

8  review of procedural default based on the contemporaneous objection rule based on the

9  lack of reasoned decisions). In light of recent Supreme Court authority, even if not

10  applied entirely consistently, a state rule can be considered consistently applied. See

11  Walker v. Martin, 131 S. Ct. 1120, 1128 (2011) ("A discretionary state procedural rule ...

12  can serve as an adequate ground to bar federal habeas review.  A rule can be firmly

13  established and regularly followed even if the appropriate exercise of discretion may

14  permit consideration of a federal claim in some cases but not others.") (citations and

15  internal quotations omitted).

16      Petitioner has not provided any evidence to establish that the contemporaneous

17  objection rule was not consistently applied. Accordingly, this Court finds that Petitioner

18  has not met his burden of challenging the procedural default and his claim is barred

19  from federal review.

20      To overcome a procedural default a prisoner must "demonstrate cause for the

21  default and actual prejudice as a result of the alleged violation of federal law, or

22  demonstrate that failure to consider the claims will result in a fundamental miscarriage

23  of justice."  Coleman, 501 U.S. at 750.  "'[C]ause' under the cause and prejudice test

24  must be something external to the petitioner, something that cannot fairly be attributed

25  to him: '[W]e think that the existence of cause for a procedural default must ordinarily

26  turn on whether the prisoner can show that some objective factor external to the

27  defense impeded counsel's efforts to comply with the State's procedural rule.'" Id. at 753

28  (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)) (emphasis in original).

### a.   Cause

In <u>Coleman</u>, the court noted that attorney error which rises to the level of ineffective assistance of counsel is considered "cause" within the meaning of this rule. <u>Coleman</u>, 501 U.S. at 753-54.  This is because a defendant has a right to effective assistance of counsel under the Sixth Amendment, and a violation of that must be seen as an external factor, and thus the error must be imputed to the state.  <u>Id.</u>; Murray, 477 U.S. at 488. Here, Petitioner has not alleged a Sixth Amendment right to effective counsel. Regardless, the Court need not determine if counsel's ineffective assistance was a sufficient cause, as Petitioner has not shown he was prejudiced by his attorney's conduct.

### b.   Prejudice

Prejudice is a required element for Petitioner to overcome a procedural bar. In order to establish prejudice to overcome a procedural default, Petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." <u>See</u> <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982) (discussing prejudice where defendant failed to object to jury instructions in proceeding under 28 U.S.C. § 2255); <u>Schneider v. McDaniel</u>, 674 F.3d 1144, 1153 (9th Cir. 2012). "Prejudice [to excuse a procedural default] is actual harm resulting from the alleged error." <u>Vickers v. Stewart</u>, 144 F.3d 613, 617 (9th Cir. 1998).

Here, the impeachment evidence was that the detective had been charged with a crime, but not ultimately convicted. Petitioner claims that the evidence would have effectively impeached the detective's credibility. As the evidence did not show that the detective did engage in criminal behavior, the impeachment evidence was not overly strong as to undermine the jury's confidence in the detective's testimony. Furthermore, the court likely would have found the evidence prejudicial under California Evidence code § 352, and would have denied the use of the evidence even in the face of an objection. Therefore, the court's decision to exclude the impeachment evidence did not

1   prejudice Petitioner, or had a "substantial and injurious effect or influence in determining

2   the jury's verdict."  Brecht, 507 U.S. at 637. Petitioner has not made a sufficient showing

3   of cause and prejudice to overcome the procedural bar as to his claim of the denial of

4   the use of impeachment evidence and cannot establish "actual harm resulting from the

5   alleged error" sufficient to excuse the default.

6                                    c.      Miscarriage of Justice

7          Finally, Petitioner can avoid a procedural default if he can demonstrate that a

8   fundamental miscarriage of justice would result from the default. The United States

9   Supreme Court has limited the "miscarriage of justice" exception to petitioners who can

10  show that "a constitutional violation has probably resulted in the conviction of one who is

11  actually innocent." Schlup v. Delo, 513 U.S. 298, 327 (1995). "In order to pass through

12  Schlup's gateway, and have an otherwise barred constitutional claim heard on the

13  merits, a petitioner must show that, in light of all the evidence, including evidence not

14  introduced at trial, 'it is more likely than not that no reasonable juror would have found

15  petitioner guilty beyond a reasonable doubt.'" Majoy v. Roe, 296 F.3d 770, 775-76 (9th

16  Cir. 2002), quoting Schlup, 513 U.S. at 327. In applying this standard, "A petitioner need

17  not show that he is 'actually innocent' of the crime he was convicted of committing;

18  instead, he must show that '"a court cannot have confidence in the outcome of the trial.'"

19  Majoy, 296 F.3d at 776, quoting Carriger v. Stewart, 132 F.3d 463, 478 (9th Cir. 1987)

20  (en banc), quoting Schlup, 513 U.S. at 316.

21         Petitioner has not presented any credible evidence to undermine the factual

22  assertions that form the basis of his convictions. Without presenting reliable, credible

23  evidence of his innocence, Petitioner has not made a sufficient showing of actual

24  innocence to serve as an equitable exception to procedural default. Schlup, 513 U.S. at

25  324 ("To be credible, such a claim requires petitioner to support his allegations of

26  constitutional error with new reliable evidence -- whether it be exculpatory scientific

27  evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not

28  presented at trial. Because such evidence is obviously unavailable in the vast majority

1    of cases, claims of actual innocence are rarely successful.") Petitioner has not shown

2    that it is more likely than not that no reasonable juror would have found him guilty

3    beyond a reasonable doubt had counsel objected and the court allowed him to

4    introduce the impeachment evidence, or that the Court cannot have confidence in the

5    outcome of the trial due to the errors of counsel. Id. at 314-15. Accordingly, Petitioner is

6    procedurally barred from presenting his claim.

7         Although the claim is procedurally barred, the Court shall review the merits of the

8    claim below.

9                    3.    Analysis of the Merits

10        The Constitution guarantees a criminal defendant a meaningful opportunity to

11   introduce relevant evidence in his defense. Holmes v. South Carolina, 547 U.S. 319,

12   324 (2006); Crane v. Kentucky, 476 U.S. 683, 690 (1986). In applying this rule, the

13   Ninth Circuit has noted that where the Supreme Court has found constitutional error

14   based on the application of a state evidentiary rule to exclude evidence, "[t]he

15   evidentiary rules in those cases, by their terms, required the trial court to exclude crucial

16   evidence that had a critical effect on the trial, with little or no rational justification. In

17   general, the rules precluded a defendant from testifying, excluded testimony from key

18   percipient witnesses, or excluded the introduction of all evidence relating to a crucial

19   defense." Moses v. Payne, 555 F.3d 742, 758 (9th Cir. 2009) (citing Washington v.

20   Texas, 388 U.S. 14, 22 (1967) (rejecting an evidentiary rule that precluded an

21   accomplice from testifying on the defendant's behalf); Crane, 476 U.S. at 690-92

22   (rejecting an evidentiary rule that precluded the defendant from introducing evidence to

23   show his own confession was unreliable); Chambers v. Mississippi, 410 U.S. 284, 302

24   (1973) (holding that a defendant's constitutional rights were violated because the

25   combined effect of two state evidentiary rules precluded him from effectively impeaching

26   a witness whom he alleged was the actual culprit); Rock v. Arkansas, 483 U.S. 44, 61

27   (1987) (holding that a defendant's constitutional rights were violated by an evidentiary

28   rule that impinged on his right to testify); Holmes, 547 US at 328-31 (holding that a

defendant's constitutional rights were violated by an evidentiary rule that prevented him from presenting evidence that a third party had committed the crime)).

Furthermore, the Supreme Court has recently stated that it "has never held that the Confrontation Clause entitles a criminal defendant to introduce extrinsic evidence for impeachment purposes." Nevada v. Jackson, 133 S. Ct. 1990, 1994 (2013) (per curiam) (citations omitted); see also Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (noting that the Supreme Court has not yet made a clear ruling that the admission of irrelevant or overtly prejudicial evidence constitutes a due process violation).

In this case, Petitioner desired to present impeachment evidence of the lead detective based on the detective being charged, and later acquitted of felony motor vehicle theft. The evidence was to be used to impeach the credibility of the detective, in an attempt to convince the jury not to believe his testimony. This is precisely the type of evidence the Supreme Court held is not entitled to Confrontation Clause protection. Jackson, 133 S. Ct. at 1994. Accordingly, the state court's denial of Petitioner's claim was not contrary to, or an unreasonable application of, clearly established federal law. Petitioner is not entitled to relief with regard to this claim.

**B.     Claim Two: Impeachment Evidence of an Eye Witness**

In his second claim, Petitioner asserts that the ruling precluding presenting impeachment evidence of a prosecution witness with evidence of the witness's past petty theft conviction violated his federal rights. (Pet. at 60-72.)

1.     State Decision

In the last reasoned decision denying Petitioner's claim, the appellate court explained:

**2. Evidence to Impeach a Prosecution Witness**

Rivera argues that the ruling precluding impeachment of a prosecution witness with his petty-theft prior after a contrary ruling by a different judge was an act in excess of the court's authority in violation of his federal constitutional rights to confrontation, due process, and presentation of a defense. The Attorney General argues the contrary.

On October 19, 2009, the prosecutor filed a motion in limine asking

17

the court "to preclude improper impeachment" of a witness (the owner of a business across the street from the furniture store) with his two misdemeanor priors, one for resisting an officer in 1997 (§ 148, subd. (a)), the other for petty theft in 1994 (§§ 484, 488). The prosecutor argued that both priors were "so minimal and so remote in time (over 12 and 15 years ago) that they have no probative value." (Evid. Code, § 352.)

On October 20, 2009, the court, "bearing in mind the Beagle/Castro[FN8] analysis, and comments regarding misdemeanors under Wheeler,[FN9]" ruled that impeachment was permissible with the petty-theft prior. That was "clearly a crime of moral turpitude," the court noted, but the resisting-an-officer prior was not, the court opined.

　　FN8. People v. Castro (1985) 38 Cal.3d 301; People v. Beagle (1972) 6 Cal.3d 441.

　　FN9. People v. Wheeler (1992) 4 Cal.4th 284.

On March 1, 2010, the court presiding over Rivera's trial took note of "previous rulings on in limine motions" and asked the prosecutor to "place those on the record." The prosecutor summarized the ruling about the witness as allowing impeachment with his petty-theft prior. The court replied, "All right. That would remain the order."

On March 5, 2010, the court put on the record the rulings from an off-the-record instructional colloquy the day before and inquired, "But for the issue as to the prior, are there any additions, corrections, or additions [sic] regarding the jury instructions?" Both attorneys replied in the negative. Rivera's attorney asked the court to permit impeachment of the witness with his 1994 petty-theft prior. The court asked if he had any "criminal convictions or criminal conduct" in the ensuing 16 years. Both counsel agreed that, apart from his 1997 resisting-an-officer prior, he had not. Noting the previous in-limine ruling by a different court allowing impeachment, the court nonetheless stated, "As I understand the issue, and looking at what I believe is the applicable law, although there are certainly cases that go back that far in time, they often are more substantial cases, A. B, they are part of a more consistent pattern of ongoing criminal activity, or some other indication that the witness has not changed their [sic] lifestyle, none of which would appear to be the case in this circumstance."

The court then ruled, "In balancing the prejudicial effect versus the ability of the jury to have that information before them, even with the limiting instruction of 316, the Court will exclude that prior given its age, it's a misdemeanor, and the conduct of the witness since that time." Opining that the previous in limine ruling by a different court was "law of the case," Rivera's attorney made an "essentially res judicata" objection for the record. The court replied, "And the record is certainly made. I think that an in limine in any court is just that, A. B, this is my court, my trial. I've heard all the evidence that is to be presented in my court in this trial. So with all due respect," the court concluded, "I will have the ruling stand."

With no facts in dispute, the parties agree that our duty is to review de novo the question of law before us. (In re Alberto (2002) 102 Cal.App.4th 421, 426 (Alberto).) Rivera's primary authority is People v. Riva (2003) 112 Cal.App.4th 981 (Riva), which posits that as "a general

rule one trial judge cannot reconsider and overrule an order of another trial judge. There are important public policy reasons behind this rule. 'For one superior court judge, no matter how well intentioned, even if correct as a matter of law, to nullify a duly made, erroneous ruling of another superior court judge places the second judge in the role of a one-judge appellate court.' The rule also discourages forum shopping, conserves judicial resources, prevents one judge from interfering with a case ongoing before another judge and prevents a second judge from ignoring or arbitrarily rejecting the order of the previous judge which can amount to a violation of due process. If the first judge's ruling is not reviewable on appeal or is so egregiously wrong and prejudicial the injured party cannot wait for an appeal, there is always the remedy of an extraordinary writ in this court." (Id. at p. 991, fns. omitted.)

"Naturally, as with all general rules," Riva candidly acknowledges, "there are exceptions to the rule one judge may not overrule the order of another." (Riva, supra, 112 Cal.App.4th at p. 991, fn. omitted.) Riva points out some "countervailing policy considerations. As Justice Frankfurter once remarked, 'Wisdom too often never comes, and so one ought not to reject it merely because it comes late.' Furthermore, if the second judge erred procedurally in overruling the first judge, even though the first judge was wrong on the law and the 'erring' judge was correct, it is challenging to try to explain how 'the [procedural] error complained of has resulted in a miscarriage of justice.'" (Id., fns. omitted.)

As our Supreme Court observes, "a ruling on a pretrial motion is not always binding on the trial court." (People v. Clark (1992) 3 Cal.4th 41, 119.) "In criminal cases there are few limits on a court's power to reconsider interim rulings." (People v. Castello (1998) 65 Cal.App.4th 1242, 1246.) "Some of the court's inherent powers are set out by statute, but the inherent powers of the courts are derived from the Constitution and are not confined by or dependent on statute." (Id. at pp. 1247-1248, citing, e.g., Cal. Const., art. III, § 3,[FN10] art. VI, § 1,[FN11] Walker v. Superior Court (1991) 53 Cal.3d 257, 266-267, fn. omitted.) "A court's inherent powers are wide." (Castello, supra, at p. 1248.) As "an essential ingredient of jurisdiction," those powers "include authority to rehear or reconsider rulings." (Ibid.) One of the powers historically recognized as inherent in the courts is the right to conduct and control the order of business in order to safeguard the rights of all of the parties. (Ibid.) That power is recognized as judicial in nature and as necessary to enforce rights and redress wrongs. (Ibid.)

> FN10. "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution." (Cal. Const., art. III, § 3.)

> FN11. "The judicial power of this State is vested in the Supreme Court, courts of appeal, and superior courts, all of which are courts of record." (Cal. Const., art. VI, § 1.)

Riva cautions that "for reasons of comity and public policy" a court "should decline to reverse or modify" another court's ruling "unless there is a highly persuasive reason for doing so" and admonishes that "mere disagreement with the result of the order is not a persuasive reason for reversing it." (Riva, supra, 112 Cal.App.4th at p. 992.) At the time of the

earlier ruling allowing impeachment of the witness with his petty-theft prior, Rivera still faced a trial with his two codefendants, but by the time of the later ruling precluding the witness's impeachment with that prior, Rivera was on trial alone. The evidentiary dynamics of a multidefendant trial and a single-defendant trial are quite dissimilar. As <u>Riva</u> observes, one of the factors to consider in determining the propriety of a later ruling by one court contrary to a prior ruling by another court is "a change in circumstances since the previous order was made." (<u>Id.</u> at pp. 992-993.) Our review de novo of the question of law at issue persuades us that the later ruling was not an act in excess of the court's authority. (See <u>Alberto</u>, supra, 102 Cal.App.4th at p. 426.)

Rivera argues, too, that the evidentiary ruling at issue violated his federal constitutional rights to confrontation, due process, and presentation of a defense. Violations of state evidentiary rules generally do not rise to the level of federal constitutional error. (<u>People v. Benavides</u> (2005) 35 Cal.4th 69, 91, citing <u>Estelle v. McGuire</u> (1991) 502 U.S. 62, 70.) Since the state law premise of his federal constitutional argument is meritless, the latter claim likewise fails. (<u>People v. Sanders</u> (1995) 11 Cal.4th 475, 510, fn. 3.)

<u>People v. Rivera</u>, 2011 Cal. App. Unpub. LEXIS 7111, at 14-21.

2.      Analysis

As described above with regard to claim one, the Supreme Court "has never held that the Confrontation Clause entitles a criminal defendant to introduce extrinsic evidence for impeachment purposes." <u>Nevada v. Jackson</u>, 133 S. Ct. at 1994. That is precisely the type of evidence Petitioner attempted to present in the above claim. Accordingly, the state court's denial of Petitioner's claim was not contrary to, or an unreasonable application of, clearly established federal law. Petitioner is not entitled to relief with regard to this claim.

Furthermore, Petitioner argues that the judge acted in violation of his authority in issuing an order contrary to a previously made order by a different judge in the same matter. Such a claim is for an alleged violation of state law, and not reviewable by way of a federal habeas corpus petition. <u>See Waddington v. Sarausad</u>, 555 U.S. 179, 192 n.5 (2009) ("[W]e have repeatedly held that 'it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); <u>Rivera v. Illinois</u>, 556 U.S. 148, 158 (2009) ("[A] mere error of state law . . . is not a denial of due process") (quoting <u>Engle v. Isaac</u>, 456 U.S. 107, 121, n.21 (1982) and <u>Estelle</u>, 502 U.S. at 67, 72-73); <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state

law . . . binds a federal court sitting in federal habeas"); <u>Little v. Crawford</u>, 449 F.3d 1075, 1083 (9th Cir. 2006) (quoting <u>Estelle</u>, 502 U.S. at 68). A habeas petitioner may not "transform a state-law issue into a federal one" merely by asserting a violation of the federal constitution. <u>Langford v. Day</u>, 110 F.3d 1380, 1389 (9th Cir. 1997). In light of these authorities, Petitioner is not entitled to federal habeas relief on any claims that the trial court judge acted in excess of his authority.

**C.   Claim Three: Failure to Strike Prior Felony**

In his third claim, Petitioner argues that the trial judge failed to use discretion to strike Petitioner's prior felony resulting in a grossly disproportionate sentence. (Pet. at 72-83.)

**1.   State Decision**

In the last reasoned decision denying Petitioner's claim, the appellate court explained:

**3. Strike Prior**

Rivera argues that the court committed an abuse of discretion by not striking his strike prior before imposing sentence. The Attorney General argues the contrary.

Before striking a strike prior, the court has the duty to consider, in light of the defendant's new felony, strike priors, background, character, and prospects, if he or she is outside the spirit of the three strikes law, in whole or in part, so as to justify sentencing as if he or she had fewer strike priors or no strike priors at all. (<u>People v. Carmony</u> (2004) 33 Cal.4th 367, 377 (<u>Carmony</u>).) On appellate review of a court's decision not to strike a strike prior, the "deferential abuse of discretion standard" applies. (<u>Id.</u> at p. 371.) Two fundamental precepts govern appellate review. (<u>Id.</u> at p. 376.)

First, the party attacking the sentence has the burden to show clearly that the decision was irrational or arbitrary. (<u>Carmony</u>, supra, 33 Cal.4th at p. 376.) In the absence of that showing, the appellate court presumes the court below acted to achieve legitimate sentencing objectives and will not set aside its decision on appeal. (<u>Id.</u> at pp. 376-377.) Second, the appellate court has no right to substitute its judgment for that of the court below, so the judgment cannot be reversed merely because reasonable people might disagree. (<u>Id.</u> at p. 377.) Taken together, the two precepts establish that a court commits no abuse of discretion "unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (<u>Ibid.</u>)

On April 6, 2010, Rivera filed a motion requesting the exercise of the court's discretion to strike his strike prior - a 1998 attempted second

1    degree robbery - pursuant to <u>People v. Superior Court</u> (<u>Romero</u>) (1996) 13
2    Cal.4th 497. (§§ 211, 212.5, subd. (c), 664.) He represented to the court
     that his prior "involved a dispute with a neighbor over money owed," that
3    he "was initially given probation," and that only later was he "sent to prison
     for violations of probation." "Ten years have past" without being "convicted
     of a violent crime in the interim," he argued, and he "will be too old to pose
4    a risk to society after serving the minimum time."

5          On April 13, 2010, the prosecutor filed an opposition arguing that
     Rivera's 2001, 2002, and 2004 violations of parole "clearly" showed that
6    he "is unwilling or unable to learn from his lawlessness" and "is unable to
     conform his lawless behavior to conduct acceptable by a civilized society."
7    Rivera "aided and abetted a violent armed robbery in which the victim was
     physically beaten with a loaded sawed off shotgun" and "could very easily
8    have been killed," the prosecutor argued. By having "engaged in a life of
     crime" and having "performed poorly while on parole," he concluded,
9    Rivera made clear that he "disregards the safety and laws of the
     community."

10         On April 20, 2010, the court heard argument. Noting that Rivera is
     "up there in age" and "not a young guy anymore," his attorney argued that
11   "it's just common sense that as people get older, they tend to be less
     violent and a little softer around the edges." He asked the court to
12   consider the "ongoing addiction problem" which was "why he was
     unsuccessful on probation." The prosecutor rejoined that "there are no
13   good reasons to strike the strike in this case, let alone the interest of
     justice being served by doing so." He argued Rivera has a history of doing
14   poorly on probation and parole alike, "disrespects the laws of the
     community," and is "a danger to our community." The violent crime before
15   the court, he concluded, "does not happen without Mr. Rivera."

16         The court acknowledged that "drug addiction may be a mitigating
     factor" but characterized Rivera's failure to do anything about his drug
17   addiction "as an aggravating factor." The court emphasized his "inability to
     abide by the terms of the initial sentence" and his lack of a "substantial
18   period of time without criminality or any other evidence to show a change
     in lifestyle." Finding nothing to suggest "that he would not reoffend," the
19   court denied relief. By the deferential abuse of discretion standard, the
     court's ruling was neither irrational nor arbitrary. (<u>Carmony</u>, supra, 33
20   Cal.4th at p. 377.)

21   <u>People v. Rivera</u>, 2011 Cal. App. Unpub. LEXIS 7111 at 21-24.

22              2.    <u>Analysis</u>

23   Petitioner does not allege that the sentence he challenges was imposed under an invalid

24   statute or that it was in excess of that actually permitted under state law. Cf. <u>Marzano v.</u>

25   <u>Kincheloe</u>, 915 F.2d 549, 552 (9th Cir. 1990) (due process violation found where the

26   petitioner's sentence of life imprisonment without the possibility of parole could not be

27   constitutionally imposed under the state statute upon which the conviction was based);

28   <u>see also</u> <u>Makal v. State of Arizona</u>, 544 F.2d 1030, 1035 (9th Cir. 1976) (So long as a

1   sentence imposed by a state court "is not based on any proscribed federal grounds such

2   as being cruel and unusual, racially or ethnically motivated, or enhanced by indigency,

3   the penalties for violation of state statutes are matters of state concern.") Rather,

4   Petitioner merely claims that the trial court abused its discretion under state law in

5   denying his Romero motion and erred in its application of state sentencing law.

6       Absent fundamental unfairness, federal habeas corpus relief is not available for a

7   state court's misapplication of its own sentencing laws. Estelle v. McGuire, 502 U.S. 62,

8   67 (1991); Middleton v. Cupp, 768 F.2d 1083, 1085 (1986); Christian v. Rhode, 41 F.3d

9   461, 469 (9th Cir. 1994) (federal habeas relief unavailable for claim that state court

10   improperly relied upon a prior federal offense to enhance punishment); Miller v.

11   Vasquez, 868 F.2d 1116, 1118-19 (9th Cir. 1989) (claim that a prior conviction was not a

12   "serious felony" under California sentencing law not cognizable in federal habeas

13   proceeding). To state a cognizable claim for federal habeas corpus relief based on an

14   alleged state sentencing error, a petitioner must show that the alleged sentencing error

15   was "so arbitrary or capricious as to constitute an independent due process" violation.

16   Richmond v. Lewis, 506 U.S. 40, 50 (1992).

17       Here, Petitioner cannot show that the state sentencing court's decision was

18   arbitrary or capricious. The sentencing judge declined to strike Petitioner's prior

19   conviction for purposes of sentencing after thoroughly considering the relevant

20   circumstances and applicable state sentencing law. The state appellate court, in turn,

21   also carefully considered those factors in rejecting petitioner's contention on appeal that

22   the sentencing court abused its discretion under state law. Under these circumstances,

23   Petitioner fails to demonstrate an independent due process violation and the state

24   courts' rejection of Petitioner's Romero claim is not contrary to, or an unreasonable

25   application of federal law. See Lopez v. Virga, 2012 U.S. Dist. LEXIS 155592 (E.D. Cal.

26   Oct. 29, 2012). Accordingly, Petitioner is not entitled to federal habeas relief with respect

27   to this claim.

28   ///

### D.    Claim Four: Cumulative Error

In his final claim for relief, petitioner argues that the cumulative effect of the errors at his trial violated his right to due process and a fair trial. (Pet. at 83-84.)

> In the last reasoned decision denying Petitioner's claim, the appellate court held: Rivera argues that reversal of the judgment is imperative since prejudicial error arose from the cumulative impact of individual errors. The Attorney General argues the contrary. Since Rivera fails to persuade us that any error occurred, his cumulative error argument is meritless. (People v. Heard (2003) 31 Cal.4th 946, 982.)

People v. Rivera, 2011 Cal. App. Unpub. LEXIS 7111 at 24-25.

The Ninth Circuit has concluded that under clearly established United States Supreme Court precedent, the combined effect of multiple trial errors may give rise to a due process violation if it renders a trial fundamentally unfair, even where each error considered individually would not require reversal. Parle v. Runnels, 505 F.3d 922, 927 (9th. Cir. 2007) (citing Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) and Chambers v. Mississippi, 410 U.S. 284, 290 (1973)). See also Hayes v. Ayers, 632 F.3d 500, 524 (9th Cir. 2011) (if no error of constitutional magnitude occurred at trial, "no cumulative prejudice is possible"). "The fundamental question in determining whether the combined effect of trial errors violated a defendant's due process rights is whether the errors rendered the criminal defense 'far less persuasive,' Chambers, 410 U.S. at 294, and thereby had a 'substantial and injurious effect or influence' on the jury's verdict." Parle, 505 F.3d at 927 (quoting Brecht, 507 U.S. at 637).

This Court has addressed each of Petitioner's claims raised in the instant petition and has concluded that no error of constitutional magnitude occurred at his trial in state court. This Court also concludes that the errors alleged by Petitioner, even when considered together, did not render his defense "far less persuasive," nor did they have a "substantial and injurious effect or influence on the jury's verdict." Accordingly, Petitioner is not entitled to relief on his claim of cumulative error.

## IV.    RECOMMENDATION

Accordingly, it is hereby recommended that the petition for a writ of habeas

1  corpus be DENIED with prejudice.

2      This Findings and Recommendation is submitted to the assigned District Judge,

3  pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after

4  being served with the Findings and Recommendation, any party may file written

5  objections with the Court and serve a copy on all parties. Such a document should be

6  captioned "Objections to Magistrate Judge's Findings and Recommendation." Any reply

7  to the objections shall be served and filed within fourteen (14) days after service of the

8  objections. The parties are advised that failure to file objections within the specified time

9  may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153

10  (9th Cir. 1991).

11

12

13  IT IS SO ORDERED.

14      Dated:   September 19, 2013      /s/ Michael J. Seng

15                                    UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28